UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

               S & Y ENTERPRISES, LLC,

                      Debtor.
----------------------------------------------------------------x
In re:

               SKY LOFTS, LLC,

                      Debtor.
----------------------------------------------------------------x

Chapter 11
Case No. 10-50623

Chapter 11
Case No. 10-51510

## MEMORANDUM DECISION ON APPLICATION FOR A SUBSTANTIAL CONTRIBUTION ADMINISTRATIVE EXPENSE

Appearances:

David Carlebach, Esq.
Law Offices of David Carlebach
40 Exchange Place
Suite 1306
New York, NY 10005
   *Attorney for S & Y Enterprises, LLC and*
   *Sky Lofts, LLC*

William B. Curtin, Esq.
Office of the United States Trustee
271 Cadman Plaza East
Suite 4529
Brooklyn, NY 11201
   *Office of the United States Trustee*

Kelley A. Cornish, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
   *Attorney for CAB Bedford, LLC*

Janice MacAvoy, Esq.
Gabriel Libhart, Esq.
Marissa Soto, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004
   *Attorneys for Bedford JV, LLC*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

Every bankruptcy case benefits from the services of bankruptcy professionals.  The

Bankruptcy Code permits many of these professionals to be compensated with special

administrative priority from the assets of the debtor's estate.  This administrative priority

encourages professionals, including counsel, to take on the responsibility of representing a

company in financial difficulties and steering it through the Chapter 11 process to a successful

reorganization.  This administrative priority also promotes the participation of entities who may

be represented by official committees whose professionals, like the debtor's professionals, are

compensated by the estate in recognition of the contribution that they make in the bankruptcy

case.

Many bankruptcy cases follow unusual paths.  Occasionally, an entity that is neither the

debtor nor an official committee may undertake special or even extraordinary actions that

contribute substantially to the progress of a bankruptcy case towards a successful reorganization.

Rarely, an entity's contributions are of such consequence to the bankruptcy process and the

parties as a whole that the debtor's estate, rather than the entity, should bear the reasonable costs

of those contributions, including the fees and expenses of counsel.  In these situations,

Bankruptcy Code Section 503(b)(3)(D) permits the entity to seek administrative expense priority

to recover its "actual, necessary expenses" in making a substantial contribution in the case.

Before the Court is the application of Bedford JV, LLC for an allowed administrative

expense in the amount of $1,378,949.25 in the S&Y Enterprises, LLC and Sky Lofts, LLC

Chapter 11 cases.  The Debtors, S&Y and Sky Lofts, are single asset real estate entities.

Bedford JV brings this application after losing its bid to purchase the Debtors' properties

located at 130 North 4th Street (a/k/a 193 Berry Street, a/k/a 240 Bedford Avenue), Brooklyn, New York and 242-246 Bedford Avenue, Brooklyn, New York.  Bedford JV argues that it is entitled to allowance of an administrative expense for making a substantial contribution in the Debtors' cases.  Specifically, Bedford JV states that it contributed to the success of the Debtors' reorganization by causing CAB Bedford, LLC, the successful purchaser, to increase its offer for the Debtors' properties, by drafting and defending the Debtors' second amended plans and disclosure statements, which were ultimately not confirmed, by participating in motion practice and negotiations, and by paying the counsel fees and expenses of the Debtors' principals, Yehuda and Ruthe Backer.

Bedford JV's application was met with a chorus of opposition, including from the Debtors, CAB Bedford, the United States Trustee, and the Backers.  These parties argue that Bedford JV's activities were in furtherance of its own self-interested efforts to acquire the Debtors' properties, and did not confer a direct benefit on the Debtors' estates.  They also argue that Bedford JV could have sought conventional bid protection terms at the outset of the case.  And the Debtors and CAB Bedford argue that Bedford JV lacks standing even to seek to have its claim treated as an administrative expense based on a substantial contribution under Bankruptcy Code Section 503(b)(3)(D).

Bedford JV's application thus requires the Court to address two issues.  The first is whether Bedford JV has standing to bring an application for allowance of an administrative expense under Bankruptcy Code Sections 503(b)(3) and 503(b)(4) on behalf of itself for the services of its legal counsel, or on behalf of the Backers for the services of their legal counsel.  And the second is whether Bedford JV has met the high standard that it must satisfy to recover

these counsel fees and expenses as an administrative expense to be paid from the assets of the Debtors' estates.

Based upon the entire record, including the parties' affidavits and the arguments of counsel, and for the reasons set forth below, the Court holds that Bedford JV has standing to bring this application. The Court further holds that Bedford JV nevertheless is not entitled to a substantial contribution administrative expense to recover these expenses from the Debtors' estates, because it does not satisfy the standards of Bankruptcy Code Sections 503(b)(3) and 503(b)(4). Specifically, Bedford JV has not established by a preponderance of the evidence that either it or the Backers made a substantial contribution in the Debtors' cases.

## Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B).

## Background

Bedford JV's application for an allowed administrative expense arises from the ebbs and flows of the negotiations and proposed transactions that took place among the Debtors, Bedford JV, CAB Bedford, and the Backers as these bankruptcy cases progressed toward successful reorganization and confirmation of Chapter 11 plans.

### *The Original Sale Agreement with CAB Bedford*

On July 12, 2010, the Debtors entered into an agreement to sell their properties to CAB Bedford for $20 million. The Debtors also entered into an operating agreement under which Sky Lofts received a 25 percent interest in CAB Bedford. The Debtors and CAB Bedford intended to develop the properties into an upscale retail property.

3

After the execution of the original sale agreement, Capital One Bank, N.A. declared S&Y to be in default of its obligations under a note and mortgage. As a result, on November 11, 2010, S&Y filed a voluntary Chapter 11 bankruptcy petition. At the same time, the Debtors and CAB Bedford continued to work towards closing the sale of the properties, and on November 22, 2010, the Debtors and CAB Bedford amended the original sale agreement to reduce the purchase price from $20 million to $16.5 million. The amendments, including the price reduction, were made because of increased construction costs and zoning issues.

On December 8, 2010, Sky Lofts filed a voluntary Chapter 11 bankruptcy petition. The filing was prompted by, among other things, a foreclosure action commenced by Banco Popular, N.A.

On February 24, 2011, the Debtors filed disclosure statements and plans of reorganization that contemplated the sale of the properties to CAB Bedford under the amended original sale agreement for $16.5 million. Less than two weeks later, on March 7, 2011, the Debtors filed the first amended plans. A confirmation hearing on the first amended plans was scheduled for April 28, 2011. Capital One, N.A., Banco Popular, N.A., and North Third Development, LLC objected to confirmation of the first amended plans, and the confirmation hearing was adjourned to May 26, 2011.

*The Bedford JV Sale Agreement*

On May 8, 2011, the Debtors entered into a sale agreement with Bedford JV, which provided for the sale of the properties to Bedford JV for $21 million. In connection with the sale agreement, the Backers were to receive a 35 percent interest in Bedford JV. Soon thereafter, on May 11, 2011, the Debtors filed the second amended plans, which incorporated this proposed

4

transaction.

On May 23, 2011, Banco Popular, N.A. and CAB Bedford filed objections to the second amended plans.  In opposing the plans, CAB Bedford stated that the Debtors did not inform CAB Bedford about the Bedford JV sale agreement before it was executed.  CAB Bedford also argued that as a consequence of the Bedford JV sale agreement, it had a large rejection damage claim.

On May 24 and 26, 2011, the Court held hearings at which the Debtors, CAB Bedford, and Bedford JV agreed to conduct discovery and depositions related to CAB Bedford's rejection damage claim and other issues raised in CAB Bedford's objection to the second amended plans.

*The Motion To Reject*

On June 15, 2011, the Debtors filed a motion, amended July 19, 2011, to reject the original sale agreement with CAB Bedford and to fix CAB Bedford's rejection damage claims at $100,000.  On August 1, 2011, CAB Bedford filed opposition to the motion to reject, on August 8, 2011, the Debtors filed a reply, and on August 10, 2011, CAB Bedford filed a further response to the Debtor's reply.

On August 10, 2011, CAB Bedford filed plans and disclosure statements that contemplated that it would purchase the Debtors' properties for $21,969,118 and that CAB Bedford would waive claims arising from the Debtors' rejection of the original sale agreement. The parties undertook expedited discovery on the issues presented in the motion to reject and the competing plans.  They also participated in mediation, but were unable to reach a global resolution.

*The Third Amended Plans and Confirmation*

On January 27, 2012, the Debtors filed the third amended plans and disclosure statements

seeking approval of the sale of the properties to CAB Bedford for $21 million. These plans provided that Sky Lofts would become a 35 percent member of CAB Bedford after closing. CAB Bedford and the Debtors also stipulated that CAB Bedford's rejection damage claims would be fixed at $12 million, and that CAB Bedford would agree to waive those claims.

Bedford JV objected to confirmation of the Debtors' third amended plans and the stipulation to fix CAB Bedford's rejection damage claims.

On March 9, 2012, over Bedford JV's objection, the Court approved the third amended plans and the stipulation fixing CAB Bedford's rejection damage claims, and an order confirming the plans was entered that same day.

*Bedford JV's Application for a Substantial Contribution Administrative Expense*

On February 24, 2012, Bedford JV filed this amended application for an administrative expense based on its substantial contribution in these bankruptcy cases. On March 27, 2012, the reorganized Debtors and CAB Bedford filed a joint objection to Bedford JV's application, on March 28, 2012, the United States Trustee and the Backers filed separate objections to the application, on May 31, 2012, Bedford JV filed a reply in support of its application, and on June 11, 2012, the reorganized Debtors and CAB Bedford filed a joint sur-reply to Bedford JV's reply.

On June 13, 2012, the Court held a hearing at which the Debtors, CAB Bedford, Bedford JV, and the United States Trustee appeared by counsel and were heard, and the Court marked this matter as submitted for decision.

**Discussion**

The Court first addresses whether Bedford JV has standing to seek allowance of a substantial contribution administrative expense under Bankruptcy Code Sections 503(b)(3) and

6

503(b)(4) to recover the counsel fees and expenses that it paid on behalf of itself and the Backers. The Court next addresses whether Bedford JV's application should be granted.

<u>*Administrative Expenses Under Bankruptcy Code Section 503(b)(3)*</u>

Bankruptcy Code Section 503(b) lists nine examples of administrative expenses of a debtor's reorganization that may be paid from the assets of a debtor's estate. 11 U.S.C. § 503(b). Section 507 provides that allowed administrative expenses jump to the head of the line, and have priority in the distribution of the assets. 11 U.S.C. § 507(a)(2). "[T]he Bankruptcy Code gives a higher priority to requests for administrative expenses than to prepetition claims." *ASM Capital, LP v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*, 582 F.3d 422, 431 (2d Cir. 2009). The purpose of this priority treatment is to ensure that the reasonable costs of a debtor's reorganization efforts, including professional fees, will be paid. And in appropriate circumstances, this administrative priority may extend to creditors and other parties who play an active role and bring tangible benefits to the reorganization process, "to promote meaningful . . . participation in the reorganization case." *In re Am. Preferred Prescription*, 194 B.R. 721, 726 (Bankr. E.D.N.Y. 1996).

Bankruptcy Code Section 503(b)(3)(D) permits an applicant to recover the "actual, necessary expenses" incurred by "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders . . . in making a substantial contribution in a case" under Chapter 11. 11 U.S.C. § 503(b)(3)(D). The Bankruptcy Code also provides that these expenses may include "reasonable compensation for professional services rendered by an attorney . . . of an entity whose expense is allowable" under Section 503(b)(3)(D). 11 U.S.C. § 503(b)(4).

7

Section 503(b)'s substantial contribution provision "is intended to promote meaningful . . . participation in the reorganization process, but not to encourage mushrooming administrative expenses." *In re Alert Holdings Inc.*, 157 B.R. 753, 757 (Bankr. S.D.N.Y. 1993). That is, "[c]ompensation must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate." *Id.*

Payment from the debtor's estate of a creditor's or other entity's counsel fees and expenses based on a substantial contribution in the bankruptcy case should be the exception, not the rule, because any allowed administrative expense diminishes the assets that are available for the debtor's plan of reorganization. Some administrative expenses, such as the reasonable fees and expenses of the debtor's professionals, are plainly essential to the success of the debtor's reorganization. But boundaries are necessary to maintain the "integrity of § 503(b)," and where a creditor seeks to recover its counsel fees and expenses under Section 503(b), a court should "strictly limit[] compensation to extraordinary creditor actions which lead directly to tangible benefits to the creditors, debtor or estate." *In re Best Prods. Co.*, 173 B.R. 862, 866 (Bankr. S.D.N.Y. 1994). In this context, courts have concluded that Section 503(b) administrative expenses "should be kept to a minimum" and "be narrowly construed." *Am. Preferred Prescription*, 194 B.R. at 726. *See, e.g.*, *In re Villa Luisa, L.L.C.*, 354 B.R. 345, 348 (Bankr. S.D.N.Y. 2006) (holding that "[c]laims for substantial contribution are . . . narrowly construed and are subject to strict scrutiny").

*Standing To Seek a Substantial Contribution Administrative Expense*

Several sections of the Bankruptcy Code are implicated in the question of who may seek a substantial contribution administrative expense. One is Section 503(b), which identifies certain

categories of prospective applicants, "including . . . a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders." 11 U.S.C. § 503(b)(3)(D).

Another Bankruptcy Code section that is implicated is Section 102(3), which provides that the words "includes" and "including" "are not limiting." 11 U.S.C. § 102(3). In interpreting Section 102(3), one respected treatise observes that "the use of the word 'includes' makes nonexclusive . . . the list of nine examples of what constitute administrative expenses in section 503(b)." Collier on Bankruptcy ¶ 102.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012).

Courts have reached different conclusions about an entity's standing to seek a substantial contribution administrative expense when the entity does not come within one of Section 503(b)'s designated categories. Some courts interpret Section 503(b)(3)(D) narrowly to permit only an enumerated entity to seek a substantial contribution administrative expense. As one court found, "[a third party plan funder] was not a creditor, and thus could not have applied for reimbursement under [Sections 503(b)(3)(D) and 503(b)(4)]." *In re Bethlehem Steel Corp.*, 2003 WL 21738964, at *8 (S.D.N.Y. July 28, 2003). Another court noted that even though the applicant bidder "was an active and positive participant in the debtor's auction and plan process," the bidder was not a creditor and therefore was "not a party eligible to submit a substantial contribution claim under Section 503(b)(3)(D)." *In re Innkeepers USA Trust*, Case No. 10-13800, ECF No. 1986, Tr. 71:11-12, 72:15-21 (Bankr. S.D.N.Y. Aug. 2, 2011).

Other courts read Section 503(b) more expansively and do not view creditor status as necessary in order to seek administrative priority based on "making a substantial contribution in a

case." 11 U.S.C. § 503(b)(3)(D). For example, one court denied an unsuccessful bidder's request for a substantial contribution administrative expense but observed that "this Order should not be construed as an outright bar against an administrative claim by a meritorious, non-creditor claimant which has directly conferred a benefit upon the debtor and whose claim is outside the literal categories defined by Congress in § 503(b)." *In re Frog and Peach, Ltd.*, 38 B.R. 307, 310 (Bankr. N.D. Ga. 1984). At the same time, the court was careful not to open the door too wide, and cautioned that it was "extremely reluctant to open a potential floodgate of claims by outsiders which transact with a debtor in bankruptcy, but whose claims are not specifically authorized under § 503(b)." *Id*.

Similarly, in *In re Amfesco Industries, Inc.*, 1988 WL 141524 (E.D.N.Y. Dec. 21, 1988), the court considered the merits of an application for a substantial contribution administrative expense from an applicant that was "not . . . a 'creditor' in the traditional sense" because "Sections 503(b)(3) and (4) have been read expansively." *Amfesco*, 1988 WL 141524, at \*4 (citing *Frog and Peach*, 38 B.R. at 309-10). There, the court denied an acquiring investor's application for reimbursement of its professional fees on grounds that the investor did not provide a detailed breakdown of its contributions to the debtor's estate and had not disclosed its intent to seek an administrative expense in the debtor's plan of reorganization.

Additional issues are presented when an entity seeks to recover a substantial contribution administrative expense under Section 503(b)(4) for counsel fees and expenses that it paid on behalf of another entity.

At the outset, it is plain that an applicant for a substantial contribution administrative expense to reimburse it for paying another entity's counsel fees and expenses should have no

better claim to recover those sums from the debtor's estate than that entity would have had itself. As a corollary, some courts conclude that the entity should authorize, or at least not oppose, the application. As one court notes, "only a creditor, or an attorney acting on behalf of a creditor, may apply for and receive attorneys' fees under section 503. Where the creditor has incurred no obligation to pay his attorney, that attorney cannot be said to be seeking fees from the estate 'on the creditor's behalf.'" *Olsen v. Robinson Brog Leinwand Greene Genovese & Gluck P.C. (In re Olsen)*, 334 B.R. 104, 107 (S.D.N.Y. 2005). There, the court rejected a request for a substantial contribution administrative expense under Section 503 because the application was not filed or supported by the creditor on whose behalf the expenses were incurred. *Id.*

Other courts adopt a broader approach. As one court found, Section 503(b)(4) requires only that "the entity (that is responsible for the attorneys' or accountants' fees) be capable of incurring an allowable expense." *In re Mirant Corp.*, 354 B.R. 113, 140 n.72 (Bankr. N.D. Tex. 2006). There, the court observed that "the words 'entity whose expense is allowable under. . . paragraph (3) . . .' defines the universe of entities capable of making an application under section 503(b)(4), i.e., requires that the fees sought be for an attorney or accountant that acted for a creditor (e.g.) that made a substantial contribution to the case." *Id.*

This Court concludes that Section 503(b)'s enumeration of categories of prospective applicants for a substantial contribution administrative expense is illustrative, not exclusive. Section 503(b)(3)(D) and the cases that interpret it recognize the prospect that a substantial contribution in a Chapter 11 case may come from many quarters, and that sometimes, an applicant's efforts in advancing a debtor's reorganization are of such a nature and extent that the reasonable costs of those efforts should be shifted from the applicant to the estate. Viewed

11

another way, Section 503(b)(3)(D) opens the door to the possibility that where the estate as a whole directly benefits from an entity's participation in a Chapter 11 case, that entity's counsel fees and expenses may be paid as an administrative expense.  But Section 503 does not open that door too wide, and the inquiry in each situation should be case-specific and fact-intensive.

*Whether Bedford JV Has Standing To Seek a Substantial Contribution Administrative Expense*

Bedford JV argues that it has standing under Bankruptcy Code Sections 503(b)(3) and 503(b)(4) to seek a substantial contribution administrative expense for the counsel fees and expenses that it incurred on its own behalf and on behalf of the Backers because the Bankruptcy Code and the case law that interprets it support an expansive reading of Section 503(b).

The Debtors and CAB Bedford respond that the plain language of Section 503(b)(3)(D) and case law show that an unsuccessful bidder for estate assets that is not a creditor lacks standing to apply for a substantial contribution administrative expense.  They urge that Section 503(b)(3)(D) limits the prospect of such relief to a short list of enumerated parties, and that a non-creditor unsuccessful bidder for a debtor's assets such as Bedford JV is simply not on that list.  They also note that Bedford JV could have sought a break-up fee, expense reimbursement, or other bid protection terms at the outset of its involvement in these matters, but did not do so.

In interpreting Section 503(b), this Court is informed and guided by the Bankruptcy Code's own definitions and rules of construction set forth in Section 102.  Section 503(b) contains the word "includes," which Section 102(3) construes as "not limiting."  11 U.S.C. § 102(3).  The context of Section 503(b)(3)(D) is also instructive.  This section serves the practical purpose of permitting certain costs associated with a debtor's reorganization, after notice and a hearing, to be shifted to the estate where appropriate.

Of course, a practical purpose does not translate into a low threshold for success. Even for an enumerated entity, the standard for recovering on an application for a substantial contribution administrative expense is high because these expenses are paid on a priority basis and reduce the funds available for distribution under the debtor's plan of reorganization. The standard may be even higher for entities that are not specifically listed in Section 503(b)(3)(D). A successful application is the exception, not the rule, and it will typically be an entity's obligation to bear its own counsel fees and expenses. *See, e.g.*, *In re Dana Corp.*, 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008) (noting that shifting counsel fees and expenses to the debtor's estate is warranted only in "rare and extraordinary" circumstances where the entity's involvement has "truly enhance[d]" the estate).

Yet, just as the bar to success should be set high in an application for a substantial contribution administrative expense, the bar for standing to seek such relief should be set low, for at least two reasons. First, the Bankruptcy Code identifies an illustrative, not an exclusive, list of prospective applicants. And second, it is simply not possible to craft a comprehensive list, or even a particularized legal standard, sufficient to encompass the wide range of entities and enterprises that may merit an administrative expense based on a substantial contribution in a Chapter 11 case.

Here, Bedford JV asserts that it made a substantial contribution in the Debtors' bankruptcy cases by, among other things, causing CAB Bedford to increase its offer for the Debtors' properties, drafting and defending the second amended plans and disclosure statements, participating in motion practice and negotiations, and paying the Backers' counsel fees and expenses. The Backers, as equity security holders of the Debtors, are enumerated parties under

13

Section 503(b)(3)(D).  Under the facts and circumstances of these bankruptcy cases, these assertions are sufficient to establish that Bedford JV has standing to apply for a substantial contribution administrative expense.

For these reasons, and based upon the entire record, the Court concludes that Bedford JV has standing to apply for a substantial contribution administrative expense to recover the counsel fees and expenses that it paid on behalf of itself and the Backers.

*Substantial Contribution Under Bankruptcy Code Section 503(b)(3)*

The question of whether an applicant for a substantial contribution administrative expense has made a substantial contribution in a Chapter 11 case is case-specific and fact-intensive.  *See Trade Creditor Grp. v. L.J. Hooker Corp. (In re Hooker Invs., Inc.*), 188 B.R. 117, 120 (S.D.N.Y. 1995) (noting that an inquiry into substantial contribution is "at heart" a question of fact).  It is viewed "in hindsight" and an "applicant must show a 'causal connection' between the service and the contribution."  *In re Granite Partners*, 213 B.R. 440, 447 (Bankr. S.D.N.Y. 1997) (quoting *Hall Fin. Grp. v. DP Partners, Ltd. (In re DP Partners, Ltd.)*, 106 F.3d 667, 673 (5th Cir. 1997)).  While the Bankruptcy Code does not define "substantial contribution," courts generally consider several factors, including "whether the services were provided to benefit the estate itself or all of the parties in the bankruptcy case," "whether the services conferred a direct, significant and demonstrably positive benefit upon the estate" and "whether the services were duplicative of services performed by others."  *Best Prods.*, 173 B.R. at 865.  And the benefit conferred must result from the applicant's "extraordinary" actions, not the ordinary situation.  *Id.*

The burden of proof for "entitlement to an administrative expense is on the claimant and the measure of proof is a preponderance of the evidence."  *In re Drexel Burnham Lambert Grp.*

*Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991). That is, the burden of proof "is on the applicant

to demonstrate by a preponderance of the evidence that it has made a substantial contribution in

the case." *Dana*, 390 B.R. at 108. Courts caution that "[t]he burden of proving substantial

contribution . . . is exceedingly difficult since the general presumption is that the [applicant] is

acting in its own interest." *Villa Luisa*, 354 B.R. at 348. And Section 503(b) does not modify

"[t]he general rule . . . that attorneys must look to their own clients for payment." *Dana*, 390

B.R. at 108.

The question of the weight to be given to an applicant's self-interest is similarly case-

specific and fact-intensive. On the one hand, it is reasonable to assume that "[e]fforts undertaken

by creditors solely to further their own self interest are not compensable under section 503(b)."

*Dana*, 390 B.R. at 108. For example, in the context of a bankruptcy auction, at least one court

has concluded that a substantial contribution administrative expense for an unsuccessful bidder is

not warranted:

> [W]hen a creditor is pursuing its own economic self-interest, as by definition it
> does as a bidder at a bankruptcy auction, then that creditor cannot establish the
> requisite "direct benefit" which the case law requires in order to grant a creditor a
> section 503(b) award.

*In re Pub. Serv. Co. of N.H.*, 160 B.R. 404, 452 (Bankr. D.N.H. 1993). "Incidental benefit" to

the estate is similarly an insufficient basis for a substantial contribution administrative expense

"where the services were provided solely in order to benefit the creditor." *In re Gen. Oil*

*Distrib., Inc.*, 51 B.R. 794, 805 (Bankr. E.D.N.Y. 1985).

At the same time, a measure of self-interest seems likely in nearly every situation, and

"the existence of a self-interest cannot in and of itself preclude reimbursement." *In re AmFin*

*Fin. Corp.*, 2012 WL 652018, at *4 (Bankr. N.D. Ohio Feb. 28, 2012).  *See Lebron v. Mechem Fin.*, 27 F.3d 937, 944 (3d Cir. 1994) (observing that "of course," an entity's activities that benefit the estate as a whole will also benefit that entity to "some degree").  An applicant for a substantial contribution administrative expense "need not possess an altruistic motive in taking over the debtor nor an intention that his or her actions will benefit [the] debtor's estate." *Amfesco*, 1988 WL 141524, at *4.  *See In re U.S. Lines, Inc.*, 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989) (concluding that "services that confer a significant and demonstrable benefit upon the reorganization process which have not been rendered solely on behalf of a creditor's own interest should be compensated").

Several courts recognize that the applicant's role in the bankruptcy reorganization process is among the most important considerations in determining whether a substantial contribution administrative expense is warranted.  As one court notes, "the focus on direct benefit is really a focus on process" and calls for attention to the applicant's contribution in "the entire Chapter 11 case."  *In re DPH Holdings Corp.*, No. 05-44481, ECF No. 20754, Tr. 61:14-17 (Bankr. S.D.N.Y. Oct. 21, 2010).  That court observed:

> [In the] majority of cases where courts have allowed creditors substantial contribution claims under Section 503(b)(3)[, courts] have found that the creditor played a leadership role that normally would be expected of an estate-compensated professional, but was not so performed.

*DPH Holdings*, at Tr. 63:6-11.

As another court found, "section 503(b)(3)(D) focuses on process as much as on contribution, on the movant's substantial contribution in *the case* – that is, the entire chapter 11 case."  *In re Bayou Grp., LLC*, 431 B.R. 549, 561 (Bankr. S.D.N.Y. 2010).  The court compared

16

the role of a successful applicant for a substantial contribution administrative expense to that of

the estate's retained professionals, and stated:

> The majority of cases allowing creditors' substantial contribution claims under
> sections 503(b)(3)(D) and (b)(4) have . . . found that the creditor played a
> leadership role that normally would be expected of an estate-compensated
> professional but was not so performed; most have, consistent with pre-Bankruptcy
> Code practice, involved a creditor who actively facilitated the negotiation and
> successful confirmation of the chapter 11 plan or, in opposing a plan, brought
> about the confirmation of a more favorable plan.

*Bayou*, 431 B.R. at 562. That is, the successful applicants "performed functions that normally

would have been undertaken by estate-compensated professionals, or that had to be performed

because estate compensated professionals were not doing their job." *Id. See Granite Partners*,

213 B.R. at 451, 453 (allowing substantial contribution administrative expense where unofficial

equity committee "resolv[ed] many obstacles to confirmation" and "facilitated the successful

liquidation of the three debtors" but limiting award to counsel fees and expenses associated with

work on the plan, disclosure statement, and related settlements).

This Court concludes that Section 503(b) permits a substantial contribution

administrative expense when an applicant shows that it provided services in the bankruptcy

process that yielded a direct and significant benefit to the bankruptcy estate or the parties as a

whole. The circumstances that support a substantial contribution administrative expense should

be case-specific, fact-intensive – and unusual. An applicant's self-interest is not an

insurmountable obstacle to success, but the applicant's efforts should advance the entire

bankruptcy process, not just the outcome of the case, and should move the bankruptcy case

toward a successful reorganization.

*Whether Bedford JV Is Entitled to a Substantial Contribution Administrative Expense for Its*

*Counsel Fees and Expenses*

Bedford JV argues that it is entitled to an allowed administrative expense for its counsel fees and expenses because it made a substantial contribution in the Debtors' bankruptcy cases in several ways. Most important, Bedford JV points to the fact that CAB Bedford increased its offer for the Debtors' properties by $4.5 million and provided a greater ownership interest in CAB Bedford to the Backers. Bedford JV also urges that it made a substantial contribution by entering into a contract with the Debtors to purchase the properties that enhanced the Debtors' negotiating leverage with CAB Bedford, formulating and defending the second amended plans on the Debtors' behalf, participating in extensive discovery to demonstrate that it was a "real" bidder and that the second amended plans were viable, and preparing the motion to reject and conducting the discovery in connection with that motion. Bedford JV also notes that it effectively acted as co-counsel to the Debtors, that its participation was essential to the Debtors' ability to confirm the third amended plans, and that self-interest does not preclude an applicant from receiving a substantial contribution administrative expense. Bedford JV's counsel fees and expenses amount to more than $1 million.

The Debtors and CAB Bedford respond that Bedford JV's actions do not support the allowance of a substantial contribution administrative expense because they were in furtherance of Bedford JV's efforts to acquire the Debtors' properties. They point to the fact that Bedford JV incurred these counsel fees and expenses in connection with preparing transaction documents and the second amended plans, which sought approval of Bedford JV's purchase of the properties. They also argue that the fees and expenses arose from discovery relating to the motion to reject, which was an obstacle to Bedford JV's acquisition plans. They note that Bedford JV was

18

motivated by self-interest and that its actions did not confer a direct benefit on the Debtors' estates. And they observe that Bedford JV could have sought bid protection terms, but did not do so.

The Backers similarly oppose Bedford JV's application. They argue that its actions were entirely in furtherance of its own self-interest, and that Bedford JV should not be compensated for its participation in these bankruptcy cases.

The United States Trustee also opposes Bedford JV's application. She argues that Bedford JV acted in its own self-interest as a bidder for the properties, and that any benefit to the estates was indirect. She notes that Bedford JV's counsel charged the bulk of its time to drafting the acquisition agreement between Bedford JV and the Debtors and the second amended plans, activities that inured to the benefit of Bedford JV. And she observes that it is not unusual for a prospective purchaser of a debtor's assets to become involved in plan preparation, negotiations, and drafting.

At the outset, it is worth noting that Bedford JV is not a creditor in these Debtors' cases, and does not otherwise come within any of the enumerated categories of Bankruptcy Code Section 503(b)(3). This is not an insurmountable obstacle to Bedford JV's standing to apply for a substantial contribution administrative expense. But it does suggest that as an entity that is not among those specifically listed in Section 503(b)(3)(D), Bedford JV must make a substantial showing in order to shift its counsel fees and costs to the Debtors' estates in the form of an allowed administrative expense.

In order to prevail on this application, Bedford JV must demonstrate by a preponderance of the evidence that it provided services in the bankruptcy process that yielded a direct and

19

significant benefit to the bankruptcy estate or the parties as a whole.  While a self-interested

purpose or motive does not disqualify Bedford JV from making this showing, actions that it took

principally to advance its own self-interest are not likely to provide a direct and significant

benefit to the bankruptcy estate or the parties as a whole.  Bedford JV must also show that its

efforts advanced the entire bankruptcy process, not just the outcome, and moved these

bankruptcy cases toward a successful reorganization.

The starting point in considering Bedford JV's application is whether it has established,

by a preponderance of the evidence, that it provided services in the bankruptcy process that

yielded a direct and significant benefit to the bankruptcy estate or the parties as a whole.

Here, the record shows that Bedford JV's activities in these bankruptcy cases were

principally in furtherance of its efforts to acquire the Debtors' properties.  These activities took

many forms, including preparing transaction documents and the second amended plans, engaging

in extensive and expedited discovery and motion practice, and participation in court proceedings.

But the primary objective of these activities was to advance Bedford JV's own interests, not the

interests of the bankruptcy estate or the parties as a whole.

Bedford JV correctly notes that over the course of these bankruptcy cases, CAB Bedford

increased its purchase price for the Debtors' properties, and urges that this amounts to a

substantial contribution in these cases sufficient to meet Section 503(b)(3)'s exacting standard

for an administrative expense.  But if this were adequate, then a serious but unsuccessful bidder

for a debtor's assets, or a participant in a negotiation that provides additional leverage to a debtor

in its negotiations with others, could shift its counsel fees and expenses to the debtor's estate

through a substantial contribution administrative expense.  At most, Bedford JV has shown that

its activities led to an indirect benefit to these bankruptcy cases, and plainly, that is not enough.

Another significant consideration is whether Bedford JV has established, by a preponderance of the evidence, that its efforts advanced the entire bankruptcy process, not just the outcome, and moved these bankruptcy cases toward a successful reorganization.

Here again, the record falls short. Bedford JV participated in virtually every stage of these bankruptcy cases – but as a prospective acquirer of the Debtors' assets, to advance its own interests, not to advance the entire bankruptcy process. That is, it prepared transaction documents and the second amended plans in support of its acquisition of the Debtors' properties, it participated in motion practice including the motion to reject to eliminate obstacles to its acquisition of the Debtors' properties, and it took an active role in negotiations in furtherance of its goal of acquiring the Debtors' properties. While these bankruptcy cases resulted in the successful reorganization of the Debtors through the sales of the Debtors' properties, Bedford JV's efforts were directed towards its own objectives, not the entire bankruptcy process.

Accordingly, based upon the entire record, this Court concludes that Bedford JV has not established by a preponderance of the evidence that it is entitled to a substantial contribution administrative expense under Bankruptcy Code Sections 503(b)(3) and 503(b)(4) for its counsel fees and expenses.

### *Whether Bedford JV Is Entitled to a Substantial Contribution Administrative Expense for the Backers' Counsel Fees and Expenses*

Bedford JV argues that it is entitled to an allowed administrative expense for the counsel fees and expenses that it incurred on behalf of the Debtors' principals, the Backers. Bedford JV asserts that it "provided a clearly demonstrable benefit to these Cases by allowing the equity

owners of the Debtors to secure legal representation that the equity owners would not otherwise have been able to afford," allowing them to participate in these bankruptcy cases.  Am. Appl. ¶ 55.  These fees and expenses amount to more than $321,000.

The Debtors and CAB Bedford respond that Bedford JV lacks standing to assert a substantial contribution claim for the reimbursement of these payments, and that the Backers themselves must make this application.  They also argue that Bedford JV has not shown that the high standard for a substantial contribution administrative expense has been met.

The United States Trustee also opposes Bedford JV's application and argues that the Court should not allow a substantial contribution administrative expense for the Backers' counsel fees and expenses because the Debtors' estates should not have to bear the costs of services that inured solely to the benefit of the Debtors' shareholders.

And the Backers themselves oppose Bedford JV's application.  They characterize the application as tactical, and argue that Bedford JV should not be reimbursed for its participation in the Debtors' cases because Bedford JV's actions were entirely in furtherance of its own self-interest.

As noted above, Bedford JV has standing to seek a substantial contribution administrative expense for the counsel fees and expenses that it paid on the Backers' behalf.  At the same time, Bedford JV has no better claim to recover those sums as an administrative expense than the Backers would have themselves.

Bankruptcy Code Section 503(b)(3)(d) lists "an equity security holder" among those entities which may apply to recover the "actual, necessary expenses . . . incurred . . . in making a substantial contribution in a case."  An equity security holder's application for a substantial

contribution administrative expense triggers the same analysis as any other application – that is, whether the applicant can demonstrate, by a preponderance of the evidence, that it provided services in the bankruptcy process that yielded a direct and significant benefit to the bankruptcy estate or the parties as a whole, and whether its efforts advanced the entire bankruptcy process, not just the outcome, and moved the cases toward a successful reorganization. And here too, the necessary showing must be case-specific and fact-intensive, and a successful application is likely to be marked by exceptional facts and circumstances.

The counsel fees and expenses of an equity holder have been recognized as substantial contribution administrative expense by courts in several circumstances. For example, in *In re Energy Partners, Ltd.*, the court allowed a substantial contribution administrative expense for an equity holder's counsel fees where the equity holder's counsel helped to create an equity committee which "provided the key spark that ignited the engines of consensual confirmation negotiations and doused the flames of enormous legal fees and expenses that the Debtor's estate would have otherwise incurred." *In re Energy Partners, Ltd.*, 422 B.R. 68, 81 (Bankr. S.D. Tex. 2009). And in *In re Mirant Corp.*, the court concluded that a debtor's shareholder was entitled to partial reimbursement of its counsel fees incurred in connection with its active participation in a valuation hearing, and for leading the efforts which motivated the parties to reach agreement on a consensual plan of reorganization. *Mirant*, 354 B.R. at 140-41.

Courts also readily tailor the relief granted to an equity holder in the form of a substantial contribution administrative expense by limiting the extent of the award to those expenses directly associated with the benefit to the debtor's estate. In *In re Saroca Corp.*, the court concluded that the debtor's sole shareholder made a substantial contribution by locating investors to revitalize

23

the debtor, but allowed a substantial contribution administrative expense only for the

shareholder's travel and telephone expenses related to the search, not for the shareholder's

counsel fees and expenses in the bankruptcy case because they were incurred for his personal

benefit. *In re Saroca Corp.*, 46 B.R. 533, 535-36 (Bankr. D. Me. 1985).

Here, Bedford JV has not shown by a preponderance of the evidence that the Backers

played a role in the bankruptcy process that yielded a direct and significant benefit to the

bankruptcy estate or the parties as a whole. And while the Backers, as the Debtors' principals,

may well have played a significant role in the direction of these cases, Bedford JV has not shown

that the Backers advanced the entire bankruptcy process, not just the outcome, and moved the

cases toward a successful reorganization. Nor has Bedford JV established that the Backers

would have been unable to retain counsel or participate in these bankruptcy cases if it had not

paid these sums. The services of the Backers' counsel benefitted principally the Backers, and

Bedford JV is not entitled to reimbursement for this expense.

Accordingly, based upon the entire record, this Court concludes that Bedford JV has not

established by a preponderance of the evidence that it is entitled to a substantial contribution

administrative expense under Bankruptcy Code Sections 503(b)(3) and 503(b)(4) for the counsel

fees and expenses that it paid on behalf of the Backers.

### Conclusion

For the reasons stated herein, and based upon the entire record, the Court finds that

Bedford JV has standing to bring an application for an allowed administrative expense under

Bankruptcy Code Sections 503(b)(3) and 503(b)(4). The Court also finds that Bedford JV has not

established that it is entitled to an allowed administrative expense because it has not satisfied the

standards of Bankruptcy Code Sections 503(b)(3) and 503(b)(4). An order in conformity with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**September 28, 2012**

25

_____
**Elizabeth S. Stong**
**United States Bankruptcy Judge**